Filed 12/18/23  P. v. Madrid CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>DAVID JOSEPH MADRID,<br><br>        Defendant and Appellant. | B326816<br><br>(Los Angeles County<br>Super. Ct. No. BA332987) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mark S. Arnold, Judge.  Affirmed.

Tanya Dellaca, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

_____

David Joseph Madrid appeals from an order denying his petition for resentencing under Penal Code section 1172.6.[1] His appellate counsel filed a brief under *People v. Delgadillo* (2022) 14 Cal.5th 216 (*Delgadillo*), and Madrid filed a supplemental brief. We review the contentions raised in the supplemental brief and affirm the order.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.     Factual Background

The following summary is taken from our opinion resolving Madrid's direct appeal to provide background and context. (See *Delgadillo*, *supra*, 14 Cal.5th at p. 222, fn. 2.)

On the evening of November 3, 2007, a group of friends gathered at the home of Rigoberto Meza located in East Los Angeles. Two of them, Roberto Romero and a man identified only as Josue, walked to a nearby store. As they returned to Meza's home, a black Cadillac driven by Madrid (who had a shaved head) and a blue Honda Civic driven by an unidentified man pulled up alongside them. A man in the Honda asked Josue, "Hey, what's up? Where you from?" Josue replied, "No, we're from nowhere." After Romero told the men to leave them alone, six or seven men (including Madrid) exited the two cars and began chasing Romero and Josue, who ran towards Meza's home. Some of the men carried bats. Madrid was armed with a revolver.

---

[1]     Effective June 30, 2022, Penal Code section 1170.95 was renumbered section 1172.6, with no change in text. (Stats. 2022, ch. 58, § 10). We hereafter cite to section 1172.6. All further statutory references are to the Penal Code unless otherwise indicated.

At this point, Meza, Jose Beltran, Pedro Torres Covarrubias, and several other men left Meza's home and ran towards Romero and Josue. Madrid shot at the group with a black .38-caliber revolver as he stood behind a pole. Romero, Covarrubias, and Beltran were hit, and each sustained serious injuries. The shootings took place in the territory of the Mariana Maravilla gang, a rival of the Arizona Maravilla gang. After the shooting, Madrid threw a gang sign, "AMV," with his fingers.

Law enforcement soon arrived. No gun casings were found at the scene, a fact consistent with a revolver having been used. The three victims were transported to the hospital and treated for gunshot wounds.

On November 29, 2007, police executed a search warrant at Madrid's home, and he was placed under arrest. Madrid's head was shaved, and the black Cadillac he drove the night of the shooting was parked in the driveway. In the backyard of the home, police recovered a loaded and operable chrome .357-Colt Python revolver wrapped in a towel.

Madrid testified at trial. He stated he had been in the Arizona Maravilla gang as a teenager but was no longer a member. He raised an alibi defense to the charges, testifying he was in Montebello with "a big household" at the time of the shootings. He further testified the black Cadillac was not operable on November 3, 2007. As for the chrome revolver found hidden in his backyard, he first testified it was not his but then explained, "I take full responsibility because it's in that household on that property so I can't really say that it's not mine, you know? . . . [My family has] registered firearms too, but in this case it was an unregistered one." Madrid presented no

3

witnesses to support his alibi defense. (*People v. Madrid* (Sep. 10, 2012, B229781 [nonpub. opn.].)

## B.    Procedural Background

In 2010, a jury convicted Madrid of three counts of assault with a firearm (§ 245, subd. (a)(2)) and three counts of attempted murder involving victims Robert Romero, Pedro Torres Covarrubias, and Jose Beltran, with findings that each attempted murder was committed willfully, deliberately, and with premeditation (§§ 664, 187, subd. (a).)  The jury further found true allegations that Madrid personally and intentionally discharged a firearm causing great bodily injury (§ 12022.53, subds. (b)-(d)) and that each crime was committed to benefit a street gang (§ 186.22, subd. (b)(1)(A)).  The jury also found that during the commission of the gang allegation a principal used a firearm.  (§ 12022.53, subd. (e).)  The trial court sentenced Madrid to an aggregate term of 122 years to life in state prison.

In 2012, a panel of this court affirmed Madrid's convictions in *People v. Madrid* (Sept. 10, 2012, B229781) [nonpub. opn.].)

In 2022, Madrid, represented by defense counsel, filed a petition for resentencing under former section 1170.95, now section 1172.6.  Madrid argued it was possible he was convicted under an implied malice theory in light of the prosecutor's argument regarding the gang enhancement.  Quoting from the prosecutor's closing argument, Madrid pointed out the prosecutor told the jury the gang-related firearm enhancement was "a little bit different" and only required that a principal discharged a firearm.  The People opposed the petition, arguing Madrid was ineligible for relief as a matter of law because his jury was not instructed on the natural and probable consequences theory, and

4

Madrid was prosecuted and convicted as a principal who acted with actual malice in the crimes. The People attached this court's opinion from Madrid's direct appeal, as well as the jury instructions and verdicts from the underlying trial.

The trial court denied the motion on the grounds that Madrid failed to demonstrate prima facie entitlement to relief. At the hearing on the petition, the court observed no jury instructions were given regarding natural and probable consequences. The court further observed the jury found Madrid guilty as the shooter and found "he had the specific intent to kill and it was willful, deliberate, and premeditated."

Madrid timely appealed.

## DISCUSSION

### A.     *Delgadillo* **Procedures and Supplemental Briefing**

We appointed counsel to represent Madrid, and counsel filed a brief raising no issues and requesting that this court proceed pursuant to *Delgadillo*, *supra*, 14 Cal.5th 216. This court advised Madrid of his right to file a supplemental brief (see *id.* at pp. 231–232), and Madrid did so. We evaluate the arguments set forth in that supplemental brief. (*Id.* at p. 232 ["If the defendant subsequently files a supplemental brief or letter, the Court of Appeal is required to evaluate the specific arguments presented in that brief and to issue a written opinion"].)

### B.     **Relevant Law Regarding Section 1172.6 Relief**

Under the ameliorative changes to the law relating to accomplice liability for murder effected by Senate Bill No. 1437 (Stats. 2018, ch. 1015), malice must be proved to convict a principal of murder under the narrowed felony-murder rule set

5

forth in revised section 189, subdivision (e). Malice may not be imputed based solely on an individual's participation in a crime (§ 188, subd. (a)(3)). Thus, the natural and probable consequences doctrine can no longer serve as a basis for finding a defendant guilty of murder. (*People v. Gentile* (2020) 10 Cal.5th 830, 842–843; see *People v. Reyes* (2023) 14 Cal.5th 981, 984.) As amended by Senate Bill No. 775 (Stats. 2021, ch. 551, § 2), effective January 1, 2022, Senate Bill No. 1437's changes to the law of murder expressly apply to individuals convicted of attempted murder and voluntary manslaughter.

"Senate Bill 1437 also created a special procedural mechanism for those convicted under the former law to seek retroactive relief under the law as amended," now codified in section 1172.6. (*People v. Strong* (2022) 13 Cal.5th 698, 708; *Lewis* (2021) 11 Cal.5th 952, 957, 959.) "If [a] petitioner ma[kes] a prima facie showing for relief, the trial court [is] required to issue an order to show cause for an evidentiary hearing." (*People v. Hurtado* (2023) 89 Cal.App.5th 887, 891; § 1172.6, subd. (c).) The court may deny the petition if the record of conviction demonstrates that the petitioner is ineligible for relief as a matter of law. (*Lewis, supra,* 11 Cal.5th at pp. 970–972.)

Where a trial court denies a section 1172.6 petition based on the failure to make a prima facie case for relief, our review is de novo. (See *People v. Williams* (2022) 86 Cal.App.5th 1244, 1251.)

**C.    Madrid Has Failed to Demonstrate Error in the Trial Court's Order Denying Section 1172.6 Relief**

In his supplemental brief, Madrid contends the trial court erred in denying his resentencing petition for several reasons.

First, Madrid asserts he is eligible for resentencing relief because the jury was offered a vicarious theory of liability through the gang enhancement allegation. Madrid advanced this argument in his section 1172.6 petition below, but it was properly rejected in light of the jury instructions and verdicts. That is, although the prosecutor may have noted in closing argument that the gang-related firearm enhancement was "a little bit different" and only required that a principal discharged a firearm during the crimes, this argument did not change the theory of liability for attempted murder under which Madrid was convicted. The prosecutor argued Madrid was the actual shooter in this case, and no instruction on the natural and probable consequences theory was given to the jury.

To the extent the jury was also given an instruction on direct aiding and abetting, the record here establishes that Madrid was found to have harbored the requisite malice to preclude section 1172.6 relief. The jury found that Madrid committed attempted premeditated murder and personally and intentionally discharged a firearm that inflicted great bodily injury on the three victims. CALCRIM No. 600, defining attempted murder, requires proof of express malice ("[t]he defendant intended to kill"). CALCRIM No. 601, defining an attempt to commit willful, deliberate, and premeditated murder reinforces the requirement that the People prove express malice. (See *People v. Lee* (2023) 95 Cal.App.5th 1164, 1191–1192 [even assuming appellant was convicted of attempted murder as an

aider and abettor, the instructions necessarily required the jury to find he intended to aid and abet an unlawful killing—"the very definition of express malice"].)  In short, nothing in the jury's verdicts, considered with the instructions given, suggests malice was imputed to Madrid solely on his participation in the underlying crimes.

Second, Madrid makes several arguments asserting defense counsel rendered ineffective assistance during the section 1172.6 proceedings.  For example, Madrid asserts that had counsel further examined his underlying criminal record, he would have found that an enhancement allegation for personal infliction of great bodily injury was dismissed at the preliminary hearing prior to trial.  Counsel would have also found that during Madrid's subsequent criminal trial, the jury submitted a question on "intent"—an indication they were struggling on that issue before reaching a verdict.  Madrid further asserts the evidence of his identity as the shooter was weak in this case.

As previously observed by the California Supreme Court, however, there is no constitutional right to effective assistance of counsel in postconviction proceedings or proceedings to obtain collateral relief from a judgment of conviction.  (*Delgadillo*, *supra,* 14 Cal.5th at pp. 226–227.)  Even if there were, Madrid does not demonstrate that counsel's performance fell below an objective standard of reasonableness.  (See *Strickland v. Washington* (1984) 466 U.S. 668, 687–688.)  That is, "[t]he mere filing of a [prior Penal Code] section 1170.95 petition does not afford the petitioner a new opportunity to raise claims of trial error or attack the sufficiency of the evidence supporting the jury's findings."  (See *People v. Farfan* (2021) 71 Cal.App.5th 942, 947.) Here, the new arguments identified by Madrid do not bear on

whether he could "presently be convicted of murder" under section 1172.6. (See *People v. Solomon* (2010) 49 Cal.4th 792, 843, fn. 24 [defense counsel not ineffective for failing to raise futile arguments].) As discussed above, the record of conviction establishes that Madrid is ineligible for relief as a matter of law.

Discerning no basis for disturbing the trial court's decision, we affirm the order denying resentencing relief. (*Delgadillo*, *supra*, 14 Cal.5th at p. 232; *People v. Gonzalez* (2021) 12 Cal.5th 367, 410 [it is the appellant's burden to affirmatively demonstrate error].)

## DISPOSITION

The order denying Madrid's postconviction petition for resentencing under section 1172.6 is affirmed.


MORI, J.

We concur:



CURREY, P.J.



COLLINS, J.

9